UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

OSCAR DIAZ, on behalf of himself and all others similarly situated,
:
: 03 Civ. 10194 (SHS)
:
Plaintiff,
:
: <u>OPINION & ORDER</u>
-against-
:
:

GEORGE E. PATAKI, individually and in his
official capacity as Governor of the
State of New York; ELIOT SPITZER, individually
and in his capacity as Attorney General of the
State of New York; ALAN HEVESI, individually
and in his capacity as Comptroller of the
State of New York; HECTOR DIAZ, in his official
Capacity as Clerk of the County of the Bronx, and
on behalf of a defendant class of New York County
Clerks; and CHURCHILL MORTGAGE
INVESTMENT CORPORATION,
:
:
:
:
:
:
:
:
:
:
:
:
:
Defendants.
:

------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

**Introduction**

Oscar Diaz brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of the Fifth and Fourteenth Amendments to the United States Constitution. Diaz claims that New York State's lis pendens statute, N.Y. C.P.L.R. §§ 6501-6515 violates his rights to due process and equal protection of the laws both on its face and as applied to him.

Defendants New York State Governor George E. Pataki, Attorney General Elliot Spitzer, Comptroller Alan Hevesi, and Bronx County Clerk Hector Diaz have now moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim. For the reasons set forth below, that motion is granted.

## I.  Facts

The following facts are taken from the complaint and are assumed to be true for the purposes of this motion.  See McKenna v. Wright, 386 F.3d 432, 434 (2d Cir. 2004) (citing Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 250 (2d Cir. 2001)).  Plaintiff Oscar Diaz ("Diaz") is a New York State resident of Bronx County. (Compl. ¶ 7).  Defendant Churchill Mortgage Investment Corporation is a corporation located in Florida and organized pursuant to the law of Delaware.[1]  (Id. ¶ 12).  The other defendants are all officials of the state of New York: George E. Pataki is the Governor; Elliot Spitzer is the Attorney General; Alan G. Hevesi is the Comptroller; and Hector Diaz is the clerk of Bronx County (collectively, "the state defendants").  (Id. ¶¶ 8-11). Diaz sues Pataki, Spitzer, and Hevesi in both their individual and official capacities.  (Id. ¶¶ 8-10).  He sues Hector Diaz in his official capacity only.  (Id. ¶ 11).

In approximately 1992, Diaz took out a mortgage on his home from Churchill in the amount of $65,000.  (Id.  ¶¶ 31-33).  He subsequently "fell behind in his mortgage payments" and in 2003 Churchill "commenced foreclosure proceedings … in the Supreme Court of Bronx County."  (Id. ¶ 35).  At the same time, Churchill filed a notice of pendency, also known as a lis pendens, against Diaz's home with the clerk of Bronx County, to whom Churchill paid a state filing fee.  (Id. ¶ 23, 24, 35).

Diaz claims that the notice of pendency "makes it, as a practical matter, impossible for him to sell the home."  (Id. ¶ 37).  However, Diaz does not allege that he attempted to sell the home or that an interested buyer declined to purchase the home after learning of the notice of pendency.  Diaz alleges that he has meritorious defenses to the

---

[1] Churchill has never appeared in this action and the court docket does not contain any indication that it has ever been served with the complaint.

mortgage foreclosure action that, according to the statutory scheme, "could not be raised to lift the lis pendens," (<u>id.</u> ¶ 40), but Diaz does not allege that he ever moved in the Supreme Court of Bronx County to remove the lis pendens.

## II.    Diaz's Complaint and Defendants' Motion

Diaz claims that New York's lis pendens statute, N.Y. C.P.L.R. §§ 6501-6515, both facially and as applied to him, violates his rights to due process and equal protection of the laws.  Although Diaz's equal protection claim is left unexplained, he founds his due process claim upon <u>Connecticut v. Doehr</u>, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), which, he claims, "set new and uniform due process standards" that "rendered … unconstitutional and void" New York's lis pendens statute.  (Compl. ¶¶ 4, 28).  However, Diaz overlooks the fact that <u>Doehr</u> concerned Connecticut's attachment statute, not a lis pendens statute – a crucial distinction for the purposes of due process analysis. Nonetheless, Diaz alleges that <u>Doehr's</u> effect upon New York's lis pendens provision was so patent that defendants "knew or should have known" the New York law was unconstitutional.  (Compl. ¶ 28).

Diaz seeks preliminary and permanent injunctive relief, declaratory relief, actual and punitive damages of at least $200,000, and costs and fees.  (<u>Id.</u> at 7).  He also requests that the Court certify a plaintiff and a defendant class and order that all lis pendens filing fees "collected by state defendants" since <u>Doer</u> was decided in 1991, "be deposited in a fund to be used by one or more of New York law schools' legal clinics for the assistance of impoverished debtors."  (<u>Id.</u>).

The state defendants assert several grounds in support of their motion to dismiss the complaint.  First, the state statute does not violate due process, either facially or as

applied to the facts alleged in Diaz's complaint. Second, Diaz's complaint fails to state an equal protection claim because he has not alleged the existence of a similarly situated class of persons who were treated differently than he. Third, the complaint fails to state a damages claim against defendants Pataki, Spitzer, or Hevesi in their individual capacities because it fails to allege any wrongful act by those defendants. Fourth, the Eleventh Amendment bars Diaz's claims seeking the forfeiture of lis pendens filing fees, or alternatively, Diaz lacks standing to seek the forfeiture of fees that he has not paid.

## III.    Standard for a Motion to Dismiss

On a Rule 12(b)(6) motion the court must assess only the "legal feasibility of the complaint…." Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) (quoting Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984)). As set forth above, in deciding a motion to dismiss the Court must accept as true all of the plaintiff's factual allegations and draw all "reasonable inferences" in favor of the plaintiff. Mason v. Amer. Tobacco Co., 346 F.3d 36, 39 (2003). "On the other hand, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." Id. (internal quotation marks omitted); see also Cooper, 140 F.3d at 440 ("[B]ald assertions and conclusions of law are insufficient…."). Ultimately, the Court may dismiss the plaintiff's complaint if "it appears beyond doubt that he can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 79 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also Swierkiewicz v. Sorema, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

**IV.    Discussion**

A.  <u>Plaintiff's Claim for Injunctive Relief Is Moot</u>

Diaz seeks preliminary and permanent injunctions "restraining defendants, their employees, agents, and servants from enforcing" the lis pendens statute against him. (Compl. at 7).  "Pursuant to Article III" of the U.S. Constitution, federal courts "have jurisdiction only over live cases and controversies." <u>ABC, Inc. v. Stewart</u>, 360 F.3d 90, 97 (2d Cir. 2004).  Thus, when a claim has become moot the court is "duty bound" to dismiss it. <u>Arthur v. Manch</u>, 12 F.3d 377, 380 (2d Cir. 1993).  Additionally, since mootness is a jurisdictional question, the Court may raise it sua sponte. <u>See</u> <u>United States v. Suleiman</u>, 208 F.3d 32, 36 (2d Cir. 2000).  The court may also refer to evidence outside the pleadings in determining the issue of mootness. <u>See</u> <u>Flores v. Southern Peru Copper Corp</u>, 343 F.3d 140, 161 n.30 (2d Cir. 2003); <u>Luckett v. Bure</u>, 290 F.3d 493, 496-97 (2d Cir. 2002); <u>Lawal v. I.N.S.</u>, No. 94 Civ. 4606 1996 WL 384917 (S.D.N.Y. July 10, 1996).  A claim becomes moot when an event occurs that makes it impossible for a court to grant the plaintiff effectual relief even if he should prevail. <u>See</u> <u>Suleiman</u>, 208 F.3d at 36.

Although Diaz alleges in his complaint that the notice of pendency made "it, as a practical matter, impossible for him to sell [his] home," by letter dated March 4, 2005, plaintiff's counsel informed the Court that Diaz "has been able to sell the property that was subject to the Notice of Pendency" and therefore he "no longer requires injunctive relief." (Compl. ¶ 37; Letter to the Court from Toby Golick, Esq. dated March 4, 2005). Because Diaz has sold the home that he claims was impaired by the lis pendens, any

injunction restraining defendants from enforcing the lis pendens would be meaningless. Accordingly, his claim for injunctive relief is dismissed as against all defendants.

B.  Diaz Has Failed to State a Claim for Money Damages Against the State Defendants

1.  Diaz Has Failed to Allege Adequately the Personal Involvement of Defendants Pataki, Spitzer, and Hevesi

As set forth above, Diaz brings a claim for damages against Messrs. Pataki, Spitzer, and Hevesi in their individual capacities.  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983." Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 254 (2d Cir. 2001).  The personal involvement of supervisory officials, such as Pataki, Spitzer, and Hevesi, requires that they either (1) "participated directly in the alleged constitutional violation"; (2) "failed to remedy the wrong" after being informed of the violation through either a report or appeal; (3) created or continued "a policy or custom under which unconstitutional practices occurred"; (4) were "grossly negligent in supervising subordinates who committed" the unconstitutional acts; or (5) exhibited "deliberate indifference" to plaintiff's rights by failing to act on information that constitutional violations were occurring.  Id. (internal quotation marks omitted).

Plaintiff has failed to allege any facts that give rise to an inference of the personal involvement of defendants Pataki, Spitzer, or Hevesi.  As to Pataki, the complaint merely alleges that he is governor of New York and is required under the state constitution to "take care that the laws of the state … are faithfully executed."  (Compl. ¶ 8).  This blanket allegation, standing alone and contained in a single paragraph of the complaint

under a section listing the parties to the action, is legally insufficient give rise to an inference of personal involvement with respect to Governor Pataki.

Similarly, as to defendant Spitzer, the complaint merely alleges that he is "the Attorney General of the State of New York who is responsible for the interpretation, enforcement and implementation of the laws of the State of New York…." (Compl. ¶ 9). Again, this bare allegation by itself cannot give rise to an inference of personal involvement on the part of Attorney General Spitzer, when there is no allegation that Spitzer had anything to do with the operation or application of the lis pendens statute either generally or in this instance.

Last, as to Comptroller Hevesi, plaintiff alleges that Hevesi "is the Comptroller of the State of New York who is responsible for collecting filing fees from the County Clerks of New York, including those for the Notices of Pendency challenged herein…." (Compl. ¶ 10). That Hevesi collects lis pendens filing fees as part of his official duties as Comptroller does not give rise to an inference of personal involvement on his part. His collection of filing fees is entirely unrelated to the grounds for personal involvement enumerated above; for example, the collection of fees has nothing to do with whether any constitutional violations were reported to Hevesi or whether he created or continued a policy under which violations occurred. Accordingly, the individual capacity damages claims against defendants Pataki, Spitzer, and Hevesi are dismissed for failure to plead adequately the personal involvement of any of those defendants.

> 2. The Eleventh Amendment Bars Diaz's Claims for Money Damages Against the State Defendants in their Official Capacities

Diaz's complaint fails to specify whether he seeks money damages against the state defendants only in their personal capacities or also in their official capacities. To

the extent that he seeks money damages against the state defendants in their official capacities, it is well established that the Eleventh Amendment bars such claims.[2] <u>See Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); <u>Huminski v. Corsones</u>, 396 F.3d 53, 70 (2d Cir. 2004); <u>Muntaqim v. Coombe</u>, 366 F.3d 102, 129 (2d Cir. 2004).

The Court also notes that Hector Diaz, the clerk of Bronx County, is a state official for the purposes of filing a notice of pendency and collecting a filing fee. The question of whether Diaz is a state official in this context "is dependent on an analysis of state law … and the definition of the official's function under relevant state law." <u>McMillian v. Monroe County</u>, 520 U.S. 781, 786, 117 S.Ct.1734, 138 L.Ed.2d 1(1997); <u>see also</u> <u>Huminski</u>, 396 F.3d at 71. Pursuant to state law, it is "clear" that Diaz's "primary function" is to "serve as clerk of the Supreme Court" of Bronx County, a state court. <u>Ashland Equities Co. v. Clerk of New York County</u>, 110 A.D.2d 60, 63, 493 N.Y.S.2d 133, 135 (1st Dep't 1985). Moreover, a lis pendens "is so inherently a part of the judicial process in resolving conflicting interests in real property that its recording amounts to a State function." <u>Id.</u> at 64. Accordingly, plaintiff's official capacity damages claims are dismissed as against the state defendants.

C. <u>The Court Exercises Its Discretion to Hear Diaz's Claims Seeking Declaratory Relief</u>

Diaz's only remaining claims seek declaratory relief since his claims for injunctive relief are being dismissed as moot; his claims for damages against Pataki, Spitzer, and Hevesi in their individual capacities are being dismissed for failure to allege

---

[2] The state defendants assume in their motion papers that plaintiff does not seek money damages against the state defendants in their official capacities and Diaz does not dispute that assumption in his responsive papers.

personal involvement; and his claims for damages against the state defendants in their official capacities are being dismissed as barred by the Eleventh Amendment.

The decision whether to entertain claims seeking only declaratory relief rests within the court's "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); see also Dow Jones & Co., Inc. v. Harrods, Ltd., 346 F.3d 357 (2d Cir. 2003). The "propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." Wilton, 515 U.S. at 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 243, 73 S.Ct. 236, 97 L.Ed. 291 (1952)) (internal quotation marks omitted).

The United States Court of Appeals for the Second Circuit has set forth five factors courts must consider in deciding whether to hear a claim for declaratory relief: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether the judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems; and (5) whether there is a better or more effective remedy. Dow Jones, 346 F.3d at 359-60.

In this case, rendering a declaratory judgment would aid in clarifying the constitutionality of the state's lis pendens statute as applied to plaintiff, and finalizing the controversy occasioned by the filing of a lis pendens against plaintiff's home. In addition, plaintiff's claims seeking other forms of relief either have become moot or are

being dismissed, leaving declaratory relief as his only available remedy. Last, because there is no pending parallel state court proceeding that has been brought to this Court's attention, this lawsuit neither implicates the sovereignty of another legal system nor is part of a strategy of procedural fencing. Therefore, the Court exercises its discretion to hear plaintiff's claims for declaratory relief.

### D. Diaz Has Failed to State an Equal Protection Claim

Diaz alleges that New York's lis pendens statute, N.Y. C.P.L.R. §§ 6501-6515, facially and as applied to him, violates his right to equal protection of the law. To state an equal protection claim, Diaz "must allege that a government actor intentionally discriminated against [him] on the basis of race, national origin, or gender. Such intentional discrimination can be demonstrated in several ways. First, a law or policy is discriminatory on its face if it expressly classifies persons on the basis of race or gender. In addition, a law which is facially neutral violates equal protection if it is applied in a discriminatory fashion. Lastly, a facially neutral statute violates equal protection if it was motivated by animus and its application results in a discriminatory effect." Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir. 1999) (internal quotation marks and citations omitted).

Diaz's complaint fails to allege, even in conclusory fashion, the basic elements of an equal protection claim. Diaz does not, and indeed cannot, allege that New York's lis pendens statute is discriminatory on its face. He does not allege that he suffered any discrimination on account of his race, national origin, or gender in connection with the events giving rise to this suit. He does not allege that the lis pendens statute is applied in a discriminatory fashion, and he also fails to allege that the statute's enactment was

motivated by animus or that the statute's application causes a discriminatory effect. Moreover, Diaz's complaint is utterly devoid of any facts from which the Court could infer the elements of an equal protection claim. Accordingly, Diaz's equal protection claim, both facially and as applied, is dismissed.

    E.  <u>Diaz Has Failed to State a Due Process Claim</u>

Last, Diaz alleges that New York's lis pendens statute, both facially and as applied to him, violates "the due process rights applicable to prejudgment remedies enumerated by a unanimous United States Supreme Court in <u>Connecticut v. Doehr</u>, 501 U.S. 1 (1991)," which held that Connecticut's attachment statute, as applied to intentional tortfeasors, violated due process. (Compl. ¶¶ 4, 28-29).

    1.  The Lis Pendens Procedure

The Court briefly describes the history of the lis pendens doctrine because history is relevant to due process analysis, <u>see</u> <u>Connecticut v. Doehr</u>, 501 U.S. 1, 16-17, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), and because New York's lis pendens statute "evolved from the common law doctrine of lis pendens," <u>In the Matter of the Estate of Max Sakow</u>, 97 N.Y.2d 436, 440, 767 N.E.2d 666, 741 N.Y.S.2d 175 (2002).

At common law, the mere filing of a lawsuit claiming an interest in real property served as constructive notice to the world of the suit and the interest claimed by the plaintiff. Regardless of whether a good faith purchaser received actual notice of the suit, "one who acquired the property from a party litigant while the suit was pending took the property subject to the outcome of the action…." <u>Chrysler Corp. v. Fedders Corp.</u>, 670 F.2d 1316, 1319 (3d Cir. 1982). "The purpose of the doctrine was to assure that a court retained its ability to effect justice by preserving its power over the property…." <u>In the</u>

<u>Matter of the Estate of Max Sakow</u>, 97 N.Y.2d at 440, 767 N.E.2d 666, 741 N.Y.S.2d 175.  The lis pendens attached "immediately upon service of process" and "a search of all court records was required to determine whether real property in which a purchaser or encumbrancer sought an interest was the subject of pending litigation."  <u>Id.</u>

In order to ameliorate the considerable difficulty of searching "all court records," states began to replace the common law doctrine with statutes "requiring the filing of a notice of pendency before a would-be purchaser or encumbrancer would be charged with notice of the prior interest.  This substantially reduced the harshness of the common law rule" since the notice of pendency was indexed in the records of the property itself, and purchasers were charged with knowledge of only what appeared in the index.  <u>Id.</u> at 441.  The first iteration of New York's statute was adopted in 1823 and is now codified at N.Y. C.P.L.R. §§ 6501-6515.

According to the statute, a notice of pendency may only be filed in a suit "in which the judgment demanded would affect the title to, or possession, use, or enjoyment of, real property…."  N.Y. C.P.L.R. § 6501 (McKinney 1980 & Supp. 2005).  As in the common law tradition, once a notice of pendency is filed against a particular property, it serves as notice to all subsequent purchasers that a suit claiming an interest in the property is pending; a person who records his conveyance or encumbrance after the notice of pendency takes his interest subject to the lawsuit.  <u>Id.</u>  The notice is valid for three years and may be extended for an additional three years only upon a showing of good cause made before the expiration of the initial term.  N.Y. C.P.L.R. § 6513 (McKinney 1980 & Supp. 2005).  The notice of pendency does not itself prevent the property owner from possessing or alienating the home; "the effect of the lis pendens is

simply to give notice to the world of the remedy being sought in the lawsuit itself."

<u>Doehr</u>, 501 U.S. at 29, 111 S.Ct. 2105, 115 L.Ed.2d 1 (Rehnquist, C.J., concurring).

Although in New York a notice of pendency may be filed ex parte, there are two ways in which "any person aggrieved" can move to have it lifted. The first is pursuant to N.Y. C.P.L.R. § 6514, which provides mandatory and discretionary grounds for cancellation. Specifically, a court "shall" cancel a notice of pendency if the summons for the underlying lawsuit has not been served within 30 days; if the action has been settled, discontinued, or abated; if the time to appeal from a final judgment against the plaintiff has expired; if enforcement of a final judgment against the plaintiff has not been stayed; if the parties to the suit stipulate to its removal; or if the time to appear in the underlying lawsuit has passed and no parties have appeared. N.Y. C.P.L.R. § 6514(a), (d), (e) (McKinney 1980 & Supp. 2005). Apart from those grounds for mandatory cancellation, a court "may" cancel a notice of pendency if the underlying lawsuit was not prosecuted or maintained in good faith. N.Y. C.P.L.R. § 6514(b) (McKinney 1980 & Supp. 2005).

Second, in all actions except those seeking mortgage foreclosures, partition, or dower, a property owner may also move pursuant to N.Y. C.P.L.R. § 6515 to substitute a bond for the notice of pendency. When entertaining a motion to substitute a bond, the court may consider the merits of the underlying action. <u>See</u> <u>Weiss v. Allard</u>, 150 F.Supp.2d 577, 583 (S.D.N.Y. 2001). Once a party moves to substitute a bond, the adverse party may offer his own undertaking in order to keep the notice of pendency in place, and this amount must be sufficient to "indemnify the [property owner] for the damages he may incur if the notice is not cancelled." N.Y. C.P.L.R. § 6515(2) (McKinney 1980 & Supp. 2005).

2.  Diaz's Facial Challenge

To plead adequately a facial challenge to the constitutionality of a statute, the plaintiff must allege facts that, if proven, would "establish that no set of circumstances exists under which the challenged Act would be valid." Cranley v. Nat'l Life Ins. Co. of Vermont, 318 F.3d 105, 110 (2d Cir. 2003) (quoting United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)); Rent Stabilization Ass'n of the City of New York v. Dinkins, 5 F.3d 591, 595 (2d Cir. 1993). "A plaintiff making a facial claim faces an uphill battle because it is difficult to demonstrate that the mere enactment of a piece of legislation violated the plaintiff's constitutional rights." Cranley, 318 F.3d at 110 (quoting Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 736 n.10, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997)) (internal quotation marks omitted).

The Court dismisses Diaz's facial challenge to New York's lis pendens statute because Diaz has failed to allege facts showing that there exists no set of circumstances under which the statute would be valid. There are, to be sure, many instances in which New York's lis pendens procedures would quite easily satisfy due process. For example, due process would not be offended if a judgment creditor claiming an interest in real property filed a lis pendens against that property. Indeed, a "notice of lis pendens is a well-established, traditional remedy," Connecticut v. Doehr, 501 U.S. 1, 29, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (Rehnquist, C.J., concurring), that the United States Court of Appeals for the Second Circuit has described as "a less restrictive means than seizure," United States v. Premises And Real Property At 4492 South Livonia Road, Livonia, New York, 889 F.2d 1258, 1265 (2d Cir. 1989); see also United States v. James Daniel Good Real Property, 510 U.S. 43, 58-59, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (describing lis

pendens as one of "various means, short of seizure," by which the government may protect its interest in forfeitable real property).

Courts have held that the filing of a lis pendens does not even constitute a seizure for the purpose of the Due Process Clause. United States v. Register, 182 F.3d 820, 836-37 (11th Cir. 1999); United States v. Borne, No. 03-Crim.-0247, 2003 WL 22836059 at *3 (E.D. La. Nov. 25, 2003); United States v. One 1997 E35 Ford Van, VIN 1FBJS31L3VHB70844, 50 F.Supp.2d 789, 808 (N.D. Ill. 1999); United States v. Real Property Known And Numbered As 429 South Main Street, New Lexington, Ohio, 906 F.Supp. 1155, 1158-59 (S.D. Ohio 1995); Batey v. DiGirolamo, 418 F.Supp. 695 (D. Haw. 1976).

In fact, on prior occasions courts have held that the application of New York's lis pendens statute did not violate due process. United States v. Premises Known As 281 Syosset Woodbury Road, Woodbury, New York, 791 F.Supp. 61, 65 (E.D.N.Y. 1992); United States v. Rivieccio, 661 F.Supp. 281, 296-97 (E.D.N.Y. 1987). Other, nearly identical lis pendens statutes also have been held constitutional pursuant to the Due Process Clause. Chrysler Corp. v. Fedders Corp., 670 F.2d 1316 (3d Cir. 1982); New Destiny Development Corp. v. Piccione, 802 F.Supp. 692 (D. Conn. 1992); Williams v. Bartlett, 189 Conn. 471, 457 A.2d 290 (1983), summarily aff'd, 464 U.S. 801, 104 S.Ct. 46, 78 L.Ed.2d 67 (1983).

Diaz has merely pled the circumstances of the mortgage foreclosure proceeding in which he is involved. These facts do nothing to alter the conclusion – reached by a variety of courts – that a statute such as N.Y. C.P.L.R. §§ 6501-6515 is constitutional in a number of scenarios. Because Diaz has failed to plead facts showing that New York's lis

pendens statute would violate the Due Process Clause in all circumstances, his facial

challenge is dismissed.  See, e.g., Rent Stabilization Ass'n of the City of New York, 5

F.3d at 595; Shaumyan, 987 F.2d at 126; Premises And Real Property At 4492 South

Livonia Road, Livonia, New York, 889 F.2d at 1263.

> 3.  Diaz's As Applied Challenges

As set forth above, Diaz claims that New York's lis pendens statute violates "new

and uniform due process standards for prejudgment remedies" established in Doehr, 501

U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1.  (Compl. ¶¶ 4, 28-29).  Doehr, however,

established no such "new and uniform" due process standards for prejudgment remedies.

Indeed, the Supreme Court in Doehr again "underscore[d] the truism that due process,

unlike some legal rules, is not a technical conception with fixed content unrelated to time,

place and circumstances."  Doehr, 501 U.S. at 10, 111 S.Ct. 2105, 115 L.Ed.2d 1

(internal quotations marks omitted).

In Doehr, petitioner John DiGiovanni applied to the Connecticut Superior Court

for an attachment in the amount of $75,000 on respondent Brian Doehr's home.  Id. at 5.

DiGiovanni applied for the attachment in order to secure any judgment he might win in a

civil action he had filed against Doehr for assault and battery.  Id.  "The suit did not

involve Doehr's real estate, nor did DiGiovanni have any pre-existing interest either in

Doehr's home or any of his other property."  Id.

Connecticut's prejudgment attachment statute did not afford a pre-attachment

hearing, and it did not require that DiGiovanni post a bond to insure against damages that

the Doehr might suffer because of a wrongful attachment.  Id. at 5-6.  The Connecticut

Superior Court issued the attachment on Doehr's home and Doehr challenged the constitutionality of the Connecticut attachment statute as applied to him.  Id. at 6.

The Supreme Court held that the Connecticut statute violated due process when applied in connection with intentional tort actions.  Id. at 13-17.  The Court stressed three aspects of its holding: first, because of the nature of intentional tort actions, the risk of erroneous attachment was high.  "Unlike determining the existence of a debt or delinquent payments, the issue [in intentional tort suits] does not concern 'ordinarily uncomplicated matters that lend themselves to documentary proof.'"  Id. at 14 (quoting Mitchell v. W.T. Grant Co., 416 U.S. 600, 609, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974)).  Second, the plaintiff in the underlying tort action had a "minimal" interest in the ex parte attachment because the "plaintiff had no existing interest in Doehr's real estate when he sought the attachment."  Id. at 16.  Balancing the high risk of error against the plaintiff's minimal interest, the Court concluded that the Connecticut statute ran afoul of due process as applied to Doehr's circumstances.  Last, the Court noted that history supported its analysis, as prejudgment "attachment is a remedy unknown at common law."  Id.

The Second Circuit also has stressed that the application of Connecticut's statute to intentional tortfeasors caused the due process problems found by the Supreme Court; indeed, after Doehr the Second Circuit upheld the same statute as applied to a defendant in a lawsuit that claimed an existing interest in the defendant's property.  Shaumyan v. O'Neil, 987 F.2d 122, 126 (2d Cir. 1993) ("[T]he Court [in Doehr] emphasized that disputes between debtors and creditors readily lend themselves to accurate ex parte assessments of the merits.") (quoting Doehr, 501 U.S. at 17, 111 S.Ct. 2105, 115 L.Ed.2d).

Diaz has not pled a due process claim pursuant to <u>Doehr</u> because that case did not establish procedural prerequisites for lis pendens statutes, and in any event, Diaz has pled facts starkly different from the facts of <u>Doehr</u>. First, <u>Doehr</u> concerned prejudgment attachment, a remedy alien to the common law that acts as an "incipient lien," <u>Doehr</u>, 501 U.S. at 27, 111 S.Ct. 2105, 115 L.Ed.2d (Rehnquist, C.J., concurring); a lis pendens, by contrast, is a remedy with a long common law history that merely provides notice of a pending claim. Second, <u>Doehr</u> held the Connecticut attachment statute unconstitutional only in connection with underlying intentional tort actions. In his complaint, Diaz alleges that the lis pendens was filed against his home in connection with a mortgage foreclosure proceeding after he fell behind in his mortgage payments – precisely the "category of cases that the <u>Doehr</u> Court sought to distinguish from intentional tort cases." <u>Shaumyan</u>, 987 F.2d at 126. Accordingly, to the extent that Diaz's complaint specifically pleads his due process claim pursuant to <u>Doehr</u>, Diaz has failed to state a claim.

To the extent that Diaz's complaint alleges a broader due process claim, it also must be dismissed. This conclusion results from the Supreme Court's summary affirmance in <u>Williams v. Bartlett</u>, 464 U.S. 801, 104 S.Ct. 46, 78 L.Ed.2d 67, which is binding upon this Court. <u>See</u> <u>Hicks v. Miranda</u>, 442 U.S. 332, 343-44, 95 S.Ct. 2281, 45 L.Ed.2d 223; <u>Pinsky v. Duncan</u>, 898 F.2d 852, 859 (2d Cir. 1990) (Mahoney, J., concurring).

In <u>Williams</u>, the Connecticut Supreme Court had upheld the constitutionality of that state's lis pendens statute. As in New York's law, the Connecticut law "provided only for a post-filing hearing…." <u>Williams</u>, 189 Conn. at 476, 457 A.2d 290. Unlike

New York's law, the Connecticut statute did not contain a bonding provision "whereby the property owner may substitute security to obtain the release of the lis pendens…." Id.

The only other difference between the two statutes concerns the post-filing grounds for cancellation. Pursuant to the Connecticut law, if the property owner moves to have the lis pendens lifted, the person who filed the lis pendens must show "probable cause to sustain the validity" of his claim. Id. at 476, n.4. However, this ground for cancellation – which arises only post-filing – provides minimal protection; an identical provision in the Connecticut statute at issue in Doehr was satisfied by the filing of "only a skeletal affidavit…." Doehr, 501 U.S. at 14, 111 S.Ct. 2105, 115 L.Ed.2d 1. For the purpose of due process analysis, this difference between the Connecticut statute that was constitutionally valid and New York's statute is immaterial, as the post-filing "probable cause" review affords no additional significant protection, especially since New York's statute allows a lis pendens to be cancelled when the action was not prosecuted in good faith.

Moreover, the facts alleged in Diaz's complaint establish that he signed a mortgage, fell behind in his payments, and eventually the mortgage company foreclosed; although Diaz claims that he has meritorious defenses to the foreclosure action, he does not – and cannot – claim that the foreclosure action lacks probable cause. Accordingly, based upon the facts alleged in the complaint, Williams v. Bartlett, 189 Conn. 471, 457 A.2d 290 (1983), summarily aff'd, 464 U.S. 801, 104 S.Ct. 46, 78 L.Ed.2d 67 (1983), precludes Diaz from stating a due process claim.

The overwhelming weight of caselaw examining the constitutionality of lis pendens procedures further buttresses this conclusion. The due process analysis turns on

three factors: First, the "private interest" affected by the filing of a lis pendens.  See

Doehr, 501 U.S. at 11, 111 S.Ct. 2105, 115 L.Ed.2d 1.  Second, "the risk of erroneous

deprivation through the procedures under attack and the probable value of additional or

alternative safeguards."  Id.  Third, "the interest of the party seeking the prejudgment

remedy, with due regard for any interest the government may have in providing the

procedure or forgoing the added burden of providing greater protections."  Id.; see British

Int'l Ins. Co. Ltd. v. Seguros La Republica, 212 F.3d 138, 143 (2d Cir. 2000).  An

examination of these factors as applied to Diaz's complaint yields the conclusion that he

has failed to state a due process claim.

<h4 style="text-align:center">i.    The Private Interest</h4>

Although the filing of a notice of pendency does have some effect on Diaz's

ability to sell the home, "the effect of the lis pendens is simply to give notice to the world

of the remedy being sought in the lawsuit itself.  The lis pendens itself creates no

additional right in the property on the part of the plaintiff [in the underlying suit], but

simply allows third parties to know that a lawsuit is pending in which the plaintiff is

seeking to establish such a right."  Doehr, 501 U.S. at 29, 111 S.Ct. 2105, 115 L.Ed.2d 1

(Rehnquist, C.J., concurring); see also James Daniel Good Real Property, 510 U.S. at 58-

59, 114 S.Ct. 492, 126 L.Ed.2d 490; Register, 182 F.3d at 836-37; Premises And Real

Property At 4492 South Livonia Road, Livonia, New York, 889 F.2d at 1265; Borne, No.

03-Crim.-0247, 2003 WL 22836059 at *3; One 1997 E35 Ford Van, VIN

1FBJS31L3VHB70844, 50 F.Supp.2d at 808; Real Property Known And Numbered As

429 South Main Street, New Lexington, Ohio, 906 F.Supp. at 1158-59; Premises Known

As 281 Syosset Woodbury Road, Woodbury, New York, 791 F.Supp. at 65; Rivieccio,

661 F.Supp. at 296-97; DiGirolamo, 418 F.Supp. 695. In fact, by giving notice to potential purchasers of a suit claiming an interest in the property, "a notice of lis pendens does nothing that a conscientious seller of property would not do as a matter of course." Chrysler Corp., 670 F.2d at 1329 (quoting Debral Realty, Inc. v. DiChiara, 383 Mass. 559, 566, 420 N.E.2d 343 (1981)). Caselaw thoroughly establishes that the interest affected by the filing of a lis pendens is minimal.

### ii. Risk of Erroneous Deprivation

Diaz alleges that after he fell behind in his payments, Churchill filed the lis pendens against his home in connection with a mortgage foreclosure proceeding. Suits claiming a pre-existing interest in real property, such as "the existence of a debt or delinquent payments," ordinarily are "uncomplicated matters that lend themselves to documentary proof" and do not pose a risk of erroneous deprivation. Doehr, 501 U.S. at 14, 111 S.Ct. 2105, 115 L.Ed.2d 1. Accordingly, the risk of erroneous deprivation is insubstantial when the lis pendens statute is applied in connection with a mortgage foreclosure suit, as is alleged in Diaz's complaint.[3] See Shaumyan, 987 F.2d at 126-27; Chrysler Corp., 670 F.2d at 1329-31; Piccione, 802 F.Supp. 697-98; Williams, 189 Conn. at 479-81, 457 A.2d 290 (1983), summarily aff'd, 464 U.S. 801, 104 S.Ct. 46, 78 L.Ed.2d 67.

### iii. The Interest of the Party Seeking the Lis Pendens, with Due Regard for the Government Interest

The party seeking the lis pendens in connection with a mortgage foreclosure has substantial interests at stake. "[A] notice of lis pendens ensures that the plaintiff's claim

---

[3] Although Diaz alleges that the mortgage he signed was a "scam" that violated applicable lending law, that bald assertion is a "legal conclusion[], deduction[], or opinion[]" that is not accepted as true for the purposes of a motion to dismiss. Mason v. Amer. Tobacco Co., 346 F.3d 36, 39 (2003).

cannot be defeated by a prejudgment transfer of the property." Williams, 189 Conn. at 479, 457 A.2d 290 (1983), summarily aff'd, 464 U.S. 801, 104 S.Ct. 46, 78 L.Ed.2d 67. Moreover, the lis pendens statute serves important state interests. "If the power of the courts to determine the rights of the parties to real property could be defeated by its transfer, pendente lite, to a purchaser without notice, additional litigation would be spawned and the public's confidence in the judicial process could be undermined. ... In lieu of the harsh common law doctrine, a potential purchaser can now readily ascertain whether there is a claim affecting the property." Chrysler Corp., 670 F.2d at 1329.

In sum, the Court concludes that the private interest at stake is relatively minimal, the risk of erroneous deprivation is insubstantial, and the countervailing private and state interests are significant. Given the facts alleged in Diaz's complaint – specifically, that he fell behind in his mortgage payments, and that the lis pendens was filed in connection with a mortgage foreclosure proceeding – the Court concludes that Diaz has failed to state a due process claim.

**Conclusion**

For the reasons set forth above, the state defendants' motion to dismiss Diaz's complaint is granted. The Clerk of Court shall enter judgment dismissing the complaint.

Dated: New York, New York
   April 26, 2005

           SO ORDERED:

           Sidney H. Stein, U.S.D.J.